*269 BRYANT, Judge,
concurring in part and dissenting in part.
The majority opinion remands for resentencing based on its determination that the trial court erred in finding that the Tennessee offense of domestic assault was substantially similar to the North Carolina offense of assault on a female. Because I believe the trial court did not err in finding that the Tennessee offense of domestic assault is substantially similar to the North Carolina offense of assault on a female, I respectfully dissent from that portion of the majority opinion. I concur in the remainder of the majority opinion.
Pursuant to N.C. Gen. Stat. § 15A-1340.14(e) (2011),
[i]f the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.
Here, the State presented the trial court with copies of Term. Code Ann. § 39-13-111 and N.C. Gen. Stat. § 14-33(c). The majority opinion agrees with defendant’s argument that the trial court erred in finding that T.C.A. § 39-13-111 and N.C.G.S. § 14-33(c) are substantially similar. This Court has held that in considering whether a statute from another state is substantially similar to a North Carolina statute “the requirement set forth in N.C. Gen. Stat. § 15A-1340.14(e) is not that the statutory wording precisely match, but rather that the offense be ‘substantially similar.’ ” State v. Sapp, 190 N.C. App. 698, 713, 661 S.E.2d 304, 312 (2008). I find it inconceivable that this requirement of substantial similarity is meant to pose an insurmountable burden for the State, as each state is entitled to tailor its statutes as it sees fit. Accordingly, the State is required to prove merely by a preponderance of the evidence — not by the higher standards of by clear and convincing evidence or beyond a reasonable doubt — that two statutes are substantially similar.
North Carolina does not have a domestic assault statute. Rather, domestic assault in North Carolina is recognized as a form of assault, upon a female, by a male, under N.C.G.S. § 14-33(c)[1], no other North *270 Carolina statute is thus as suitably equivalent to T.C.A. § 39-13-111 in addressing the specific elements of an assault upon a female. Furthermore, North Carolina has no statutory definition of assault, and assault is thus defined by the common law. State v. Roberts, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967). The majority agrees with defendant that because the State did not present the trial court with'both T.C.A. § 39-13-111 and the statute to which it refers, T.C.A. § 39-13-101, the State did not meet its burden of proving that T.C.A. § 39-13-111 and N.C.G.S. § 14-33(c) are substantially similar. An examination of T.C.A. § 39-13-111, “domestic assault,” reveals that it does indeed reference T.C.A. § 39-13-101, “assault.” However, as the trial court examined the elements of assault in T.C.A. § 39-13-111 in relation to the common law definition of assault, it was unnecessary that T.C.A. § 39-13-101 accompany T.C.A. § 39-13-111 in order for the elements of assault in T.C.A. § 39-13-111 to be defined and considered by the trial court.
As defined by the common law, an assault is an unauthorized touching which causes an offensive or harmful contact. Such contact can occur between two people of any age or gender. See Roberts; see also State v. Hill, 6 N.C. App. 365, 369, 170 S.E.2d 99, 102 (1969) (“Where in a prosecution for assault. . . the evidence tends to show assault on a female at least, it is not error to fail to submit the question of guilt of simple assault.”). In creating statutes which distinguish between types of assaults, like domestic assault, these distinctions assist with governmental goals such as identifying particular categories of offenders for sentencing purposes. See State v. Gurganus, 39 N.C. App. 395, 400, 250 S.E.2d 668, 672 (1979) (“[N.C.G.S. § 14-33] in its entirety provides a logical pattern protecting the citizens of North Carolina from acts of violence. Subsection (a) of the statute establishes the crimes of assault, assault and battery and affray. Subsection (b) and its subsections do not create additional or separate offenses. Instead, those subsections provide for differing punishments when the presence or absence of certain factors is established.”).
The majority appears to accept defendant’s argument that T.C.A. § 39-13-111 is not substantially similar to N.C.G.S. § 14-33(c) because T.C.A. § 39-13-111 is gender and age-neutral while N.C.G.S. § 14-33(c) specifically applies to a male over the age of 18 assaulting a female. I find defendant’s argument to lack merit, as the State of Tennessee could have chosen to charge defendant -under its general assault statute, § 39-13-101. Instead, by charging defendant under the more specific statute for domestic abuse, the State of Tennessee pursued the more specific and relevant charge against defendant of committing assault *271 upon a female with whom he was in a relationship. Moreover, the State of Tennessee dismissed a charge of regular assault against defendant at the same time it pursued the domestic abuse charge against him. As such, the State of Tennessee demonstrated its intent to charge defendant according to the elements of the most applicable statute. Furthermore, an analysis of Tennessee case law indicates that the domestic abuse statute can and is applied specifically in situations where a male has assaulted a female .with whom he had a relationship. Compare State v. Anderson, No. W2011-00139-CCA-R3-CD, 2012 Term. Crim. App. LEXIS 707 (Sept. 5, 2012) (finding the male defendant guilty of domestic assault under T.C.A. § 39-13-111 where he admitted to choking and hitting his estranged wife); State v. Boston, No. M2010-00919-CCA-R3-CD, 2011 Term. Crim. App. LEXIS 779 (Oct. 18, 2011) (finding the male defendant guilty of domestic assault for hitting his ex-wife during a fight and guilty of aggravated assault for hitting his ex-wife’s male friend with a board); State v. Parham, No. W2009-02576-CCA-R3-CD, 2010 Term. Crim. App. LEXIS 1049 (Dec. 10, 2010) (finding the male defendant guilty of domestic assault for severely beating his ex-girlfriend with a fireplace log), remanded on other grounds, No. W2011-01276-CCA-R3-CD, 2012 Term. Crim. App. LEXIS 788 (Sept. 26, 2012); State v. Terrell, No. M2006-01688-CCA-R3-CD, 2008 Term. Crim. App. LEXIS 135 (Jan. 30,2008) (discussing how domestic abuse under T.C.A. § 39-13-111 is a specific form of assault as defined in T.C.A. § 39-13-101), with Fain v. State, No. M2009-01148-CCA-R3-PC, 2010 Term. Crim. App. LEXIS 212 (Mar. 9, 2010) (finding defendant-mother guilty of assault for beating her juvenile son); State v. Hall, No. W2008-01875-CCA-R3-CD, 2010 Term. Crim. App. LEXIS 147 (Feb. 18,2010) (finding the male defendant guilty of assault for attacking the male victim with a frying pan); State v. Adkins, No. M2007-01728-CCA-R3-CD, 2008 Term. Crim. App. LEXIS 994 (Dec. 4, 2008) (finding the male defendant guilty of assault upon two police officers, one male and one female); State v. Elkins, 83 S.W.3d 706 (2002) (finding the male defendant guilty of assault and aggravated sexual battery upon a juvenile girl).
The record in the instant case offers additional evidence in support of the statutory elements necessary to convict defendant of assault upon a female: the judgment for domestic assault indicates that defendant was to have no contact with the victim, Ashley Blango, and to attend 24 domestic abuse counseling classes. Moreover, defendant’s criminal history record indicates that he has a neck tattoo which reads “Ashley.” Although I acknowledge defendant’s contention that “Ashley” is a unisex name, I find it inconceivable that this evidence — (1) a neck tattoo with the name “Ashley,” (2) a conviction for domestic assault, *272 (3) a victim’s name of Ashley, (4) an order to attend domestic abuse counseling classes, and (5) an analysis of Tennessee case law showing how T.C.A. § 39-13-111 is specifically used for instances where a male has assaulted a female with whom he has a relationship — fails to meet the State’s burden of proving substantial similarity between the elements of the two relevant statutes by a preponderance of the evidence.
Of further note here is that T.C.A. § 39-13-111 states that “[a] person commits domestic assault who commits an assault as defined in § 39-13-101 against a domestic abuse victim.” As such, T.C.A. § 39-13-111 is clearly intended to be treated like an assault as defined under T.C.A. § 39-13-101; the distinction between these two statues is thus relevant only as to whether the assault occurred in a domestic situation or not. See State v. Woosley, No. M2013-00578-CCA-R3-CD, 2013 Term. Crim. App. LEXIS 1045, at *15 (Nov. 26, 2013) (“Domestic assault is an “assault” committed against a “domestic abuse victim.” T.C.A. § 39-13-lll(b) (2010). As charged in the indictment, an assault occurs when a person “[i]ntentionally, knowingly, or recklessly causes bodily injury to another[.]” Id. § 39-13-101(a)(1) (2010). A “domestic abuse victim” is [also] defined to include “[a]dults ... who are current or former spouses.” Id. § 39-13-111(a)(1) (2010).”); see also T.C.A. § 39-13-111(a) (2) (“[DJomestic abuse victim means . . . [a]dults . . . who live together or who have lived together].]”); Id. § 39-13-101(a) (“A person commits assault who: (1) [i]ntentionally, knowingly or recklessly causes bodily injury to another; (2) [ijntentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) [ijntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.”).
I also note that the trial court took notice of the common law definition of assault as presented by the State. This Court has recognized that in determining whether two statutes are substantially similar, the underlying purposes of the statutes must be examined to “avoid absurd or bizarre consequences.” State v. Key, 180 N.C. App. 286, 294, 636 S.E.2d 816, 823 (2006) (holding that a Maryland theft statute was substantially similar to a North Carolina larceny statute because both statutes followed common-law definitions of theft, taking, and asportation).
Here, the underlying purpose of the statutes is clear: to protect females from assaults committed by males. “In adopting G.S. 14-33, the General Assembly of North Carolina clearly sought to prevent bodily injury to the citizens of the State arising from assaults, batteries and affrays.” Gurganus, 39 N.C. App. at 400, 250 S.E.2d at 672.
*273 In matters of statutory construction, the role of this court is to ascertain and give effect to the intent of the legislature. Unless ambiguity requires resort elsewhere to ascertain legislative intent, judicial interpretation of a statute is restricted to the natural and ordinary meaning of the language used. “Legislative enactments must be interpreted in their natural and ordinary sense without a forced construction to either limit or expand their meaning.” “Courts must construe statutes as a whole and in conjunction with their surrounding parts and their interpretation should be consistent with their legislative purposes.” The meaning of a statute is to be determined not from specific words in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretation should express the intent and purpose of the legislation. “The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being [aids] to that end.”
State v. Cross, 93 S.W.3d 891, 894 (Term. Crim. App. 2002) (citations omitted). A review of the elements of the Tennessee domestic assault statute supports a similar purpose as the North Carolina assault on a female statute — to protect females from assault by males. Accordingly, upon de novo review of the trial court’s ruling after comparison of the elements of the relevant North Carolina and Tennessee assault statutes, I submit that the State met its burden of proof to show by a preponderance of the evidence that these statutes are substantially similar. Therefore, I respectfully dissent.

. That N.C.G.S. § 14-33(c) is intended to address domestic assault is further demonstrated by N.C. Gen. Stat. § 15A-534.1 (2011), “Crimes of domestic violence,” which establishes specific procedures for determining a defendant’s pretrial release “[i]n all cases in which the defendant is charged with assault on, stalking, communicating a threat to, or committing a felony provided in Articles 7A, 8, 10, or 15 of Chapter 14 of the General Statutes upon a spouse or former spouse or a person with whom the defendant lives or has lived as if married...